## Case No. 11,381.

### PRENTICE et al. v. BETTELEY.

[2 Lowell, 289.] [1]

District Court, D. Massachusetts.　Dec., 1873.

REAL PROPERTY — AGREEMENT TO CONVEY— TIME LIMIT—RULE IN EQUITY.

1. The general rule, that in cases of contract for the sale of land, equity does not consider time to be material, holds to a certain extent and in a general sense.

2. But the exceptions are numerous, and include cases in which the contract or the remedy is not reciprocal, or in which there has been a considerable change in the value of the land.

3. A. agreed to convey real estate, if certain conditions were complied with before the end of six months; the other party was not bound to fulfil the conditions, and did not do so within the time; and, meanwhile, the property had risen considerably in value. *Held*, that A. was not bound to convey, after the six months.

Bill in equity seeking a reconveyance of certain lands. William H. Prentice and his two sons, George and Theodore, carried on business as coal merchants on the land and premises known as "Prentice's Wharf," in Boston, for many years ending with 1850, when Theodore, the plaintiff, retired from the firm. The father died in 1853, and afterwards George carried on business alone, under the old name of William H. Prentice & Sons, and Theodore was his chief clerk, and drew money from time to time, which was charged to him on the books, and he was credited with his salary at the rate of $1,200 a year. Each of the brothers owned an undivided tenth part of Prentice's wharf. In 1869, George and Theodore joined in a mortgage of their shares to the Delaware & Hudson Canal Company, to secure the payment of George's debt of $20,000, of which $15,000 and interest is still unpaid. In 1872, George W. Prentice

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

failed, and certain informal meetings of his creditors were held, to see if a compromise could be effected. Among the assets exhibited to the creditors at one of the meetings, at which Theodore was present, was a statement from the books of George, showing Theodore to be very largely indebted to him. No compromise with the creditors was made, and George Prentice filed a petition in bankruptcy. About the same time the mortgagees had advertised the land for sale, and it was feared that, if sold in that way, it would not produce much more than the mortgage debt, though a much larger sum could probably be realized from it by care and good management. The defendant, Albert Betteley, was agent for one of the creditors of George Prentice, and expected to be the assignee of his estate. He had several conversations with Theodore Prentice concerning the land, and the mode of saving it from the foreclosure; and Theodore expressed his willingness to give up all his interest in the land to aid the creditors in redeeming it, provided he could be released from all indebtedness to George's estate, though he did not admit the correctness of George's account. The defendant consulted with some other creditors, who agreed with him that the proposal was a good one for the estate. Theodore accordingly made a deed to Betteley, in fee, of all his interest in the wharf and lands adjoining, which were all the property he had. When the deed had been drawn it was suggested that some evidence ought to be preserved of the purposes for which it was given, especially as Betteley might not be chosen assignee; and Betteley accordingly gave back to Theodore a paper, in which, after reciting the deed and that George W. Prentice was bankrupt, and that he claimed that Theodore was indebted to him, it was declared that the conveyance was in trust for the creditors of George, and that if his assignee or trustee, thereafter to be chosen, should, within six months from the date of the declaration, make and deliver to Betteley, for the use of Theodore, a full and complete release from all claims, debts, and demands which Theodore owed to George, then it should be lawful for Betteley to convey the estate to said assignee or trustee, to hold as part of the bankrupt's assets. But if the assignee or trustee should refuse or neglect to execute and deliver the release, then Betteley should reconvey the estate to Theodore, subject only to the mortgages already existing thereon, and the effects of any foreclosure thereof. The deed and declaration of trust were both dated June 26, 1873. Betteley was afterwards chosen assignee of the estate of George W. Prentice, but did not execute to Theodore any release from the debts due from him to the estate, until some time after the lapse of the six months, and Theodore then refused to receive it. Early in March, 1873, Betteley, as assignee, obtained leave of the district court to make the release, and he then tendered a formal

deed to that effect. This was after he had received notice that Theodore considered the agreement at an end, and had sold his interest to the person for whose benefit this suit is brought. Betteley, shortly before applying for leave to release Theodore from his debt to George's estate, had conveyed the land to one Armstrong, who had reconveyed to him as assignee in bankruptcy of George's estate. The estate in the mean time had risen very largely in value. The bill charged fraud on the part of Betteley in obtaining the deed, and a breach of the condition by not releasing the debts within six months. It denied that Theodore was indebted to George, and offered to pay whatever might be found to be due, and prayed that upon payment of the debt, if any, a reconveyance should be ordered. The answer denied the fraud, and denied that time was of the essence of the contract, or of any importance to the parties. It further gave certain reasons, not connected with the plaintiffs or their conduct, for the failure to make the offer of release sooner, admitting, however, that it was not made within the time limited in the declaration of trust.

J. A. Loring and J. D. Bryant, for plaintiffs.

H. C. Hutchins and A. S. Wheeler, for defendant.

LOWELL, District Judge. I leave out of view all question of fraud, because it is clear, and is not now denied, that no imputation whatever can be made on the good faith and honest dealing of the defendant. There is little difficulty in ascertaining most of the facts of the case. George W. Prentice was in bankruptcy; his assets, according to his own account, consisted largely of his interest in the wharf, and his claim against Theodore. One of the motives for giving the joint mortgage for the separate debt of George probably was that Theodore had been receiving advances from George. The mortgagees were threatening a foreclosure. The creditors had no one to represent them, and found it not easy to raise the money to redeem the estate. Theodore had no means for that purpose. Under these circumstances, it would not have appeared an unreasonable contract, if the parties had been in a position to make it, that Theodore should relinquish his equity, in consideration of a release of his indebtedness to George. This would give the creditors the whole equity to work with in raising money to redeem the mortgage, instead of only one-half of it, and would free Theodore from his debt. Such a contract as the parties contemplated would not have been unreasonable at the time. But, as I shall presently show, they made a unilateral contract, by which Theodore alone was bound.

In the mean time, the immediate exigency has passed, and the land has risen so much in value, that there is not only ample security for the mortgage debt, but more than enough beyond it to pay the largest amount that the creditors can possibly claim of Theodore. The prayer for a reconveyance is resisted, on the ground that equity does not regard time as essential in a contract for the conveyance of land. This is true to a certain extent and in a general sense; but the exceptions are numerous, and include cases in which the contract or the remedy is not reciprocal, or in which a considerable change in the value of the land has taken place. Both these circumstances are found in this case.

First, as to mutuality. Here was no complete contract of sale, so much land for so much debt. The amount of the debt was in dispute, though it was not then denied by Theodore that he owed something considerable, perhaps $8,000 or $9,000, instead of the $15,000 which George's books charged him with. He appears to have been willing to make such a sale, but the defendant was not ready to bind himself absolutely, and the whole transaction amounted to an offer on the part of Theodore to convey his land at any time within six months, in discharge of the debt, if the creditors of George, acting by the assignee, chose to discharge him. This offer he might have retracted at any time before the other party had accepted it, if he had not bound himself at law by giving a deed of the land; and even after that he might, perhaps, retract in equity. But this is unimportant, because the offer was neither accepted nor retracted within the six months. I am not aware that a court of equity has ever extended the time for the acceptance of an offer.

Granting that the plaintiff was bound for six months, as he held himself to be, the other party was bound to nothing excepting to return the land if the release were not furnished. It was argued that when Betteley himself became the assignee, and the six months had elapsed, the plaintiff was ipso facto discharged of his debt. If Betteley had been acting in his own right, there would be force in this argument; but I am not ready to decide that an assignee in bankruptcy can bind the assets entrusted to him, by any mere neglect of this sort. If, therefore, the situation had been changed in the reverse direction,—that is, if the land had fallen in value, and Theodore had become possessed of other property, so that a debt against him would be valuable,—there is no authority under the bankrupt act for holding that the assignee would have lost his remedy against Theodore, by his merely retaining the land beyond the six months.

This unilateral arrangement was made by Theodore Prentice for the convenience of the creditors, to enable them to avail themselves of his offer immediately, or at any time within the period agreed on. The time given was enough, and more than enough, for a decision; and the creditors did not bring themselves within the exact terms of the offer. As values stand now, the offer was one which

would not be made by a prudent man. I see no reason why a court of equity should refuse to carry out the exact agreement of the parties, especially as the plaintiff offers to pay all the pecuniary consideration there ever was for his offer. He asks that his conveyance may be treated as a mortgage to secure his debt to the estate, which is all that equity can ask under the circumstances.

It is by no means accurate to say that equity takes no note of time. The general rule in equity, as at law, is, that parties may make their own bargains, and must keep them. Equity is very unwilling that an estate should be forfeited by mere neglect to keep an appointment for the payment of money at the day agreed on. The early application of this doctrine to mortgages, by which an equity of redemption was created, was eminently just, and was acquiesced in; though of late years all persons have agreed on a form of mortgage which very much modifies this equity, by giving the mortgagee a power of sale on short notice. Its application to a failure to pay rent at the day was just, and was adopted by the common-law courts in Massachusetts, when there was no court of chancery in this state. Equity carries its objections to a forfeiture so far, that, in an ordinary contract to buy and sell land, it is unwilling that a good bargain shall be lost by unpunctuality; but, in this class of cases, the exceptions embrace more cases than the rule. Indeed, the doctrine itself is exceptional, and is explained by Mr. Justice Story, quoting and approving Baron Alderson, as being only this, that equity has power to carry out what seems to be the true intent of the parties; and if there are no circumstances to show that either party would suffer any hardship, or that any equitable consideration existed against it, the court will presume that the sale was the main thing, and the precise time of completing it was not essential. Story, Eq. Jur. § 776, note 1. "But, then, in such cases," the learned author proceeds to say, "it should be clear that the remedies are mutual: that there has been no change of circumstances affecting the character or justice of the contract; that compensation for the delay can be fully and beneficially given," &c. Section 776.

That time was not considered very material by the parties when they made this arrangement, I think highly probable. If either party had preferred to fix five months or seven months, rather than six, no doubt the other would have agreed to it. In that sense, time was not essential. But the change of values is so very considerable, that it has become inequitable for a court to make a new contract for the parties, and no court will do so after such a change. Brashier v. Gratz, 6 Wheat. [19 U. S.] 528; Barnard v. Lee, 97 Mass. 96, per Gray, J., explaining Goldsmith v. Guild, 10 Allen, 239; Story, Eq. Jur. § 776; Adams, Eq. 88.

Decree for an account and reconveyance, on the plaintiff's paying what may be found due by Theodore Prentice to the bankrupt's estate.